# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

MAURICE WELLS, Jr.,

*Plaintiff–Appellant,*

v.

SHERIFF TERRY S. JOHNSON, *in his Official Capacity as Sheriff of Alamance County, North Carolina,*

*Defendant–Appellee.*

On Appeal from a Final Judgment of the
United States District Court for the Middle District of North Carolina
Case No. 1:23-cv-427-CCE-LPA, Hon. Catherine C. Eagles

## OPENING BRIEF FOR APPELLANT

*Jeffrey A. Wald*
*Lorin J. Lapidus*
*Nelson Mullins Riley &*
  *Scarborough LLP*
*380 Knollwood Street*
*Suite 530*
*Winston Salem, NC 27103*
*(336) 774-3300*

*Sarah Ludington*
*C. Amanda Martin*
*Samara Jacobson*[†]
*Meghna Melkote*[†]
*First Amendment Clinic*
*Duke University*
  *School of Law*
*210 Science Dr., Box 90360*
*Durham, NC 27708-0360*
*(919) 613-7230*

*Counsel for Appellant*

[†] Law student appearing under Cir. R. 46(a)

# TABLE OF CONTENTS

**Page(s)**

Table of Authorities.................................................................iii

Introduction...........................................................................1

Jurisdictional Statement.........................................................3

Statement Of The Issue ..........................................................3

Statement of the Case .............................................................4

North Carolina's Two-Tier Criminal System ........................13

Summary of Argument............................................................9

Argument...............................................................................12

I.  Standard of Review ........................................................12

II. The Trial Court Erred When It Dismissed Mr. Wells' First
    Amendment Retaliatory Arrest Action on the Grounds of
    Collateral Estoppel. .......................................................13

    A.  Under North Carolina Law, Mr. Wells' Conviction,
    Appealed *De Novo* To State Superior Court, Is Not
    Available For Any Purpose, So It Cannot Preclude His §
    1983 Claim In Federal Court. ....................................19

    B.  In North Carolina, An Appealed District Court
    Conviction Is Not A Final Judgment, So Mr. Wells' §
    1983 Claim Cannot Be Collaterally Estopped. ..........24

    C.  The District Court Further Erred by Relying on Two
    Decisions of the North Carolina Court of Appeals and by
    Misreading *Gilliam*. ................................................28

    D.  This Court Should Avoid Construing North Carolina's
    Two-Tier System to Invite Serious Constitutional
    Concerns. ..................................................................32

Conclusion ............................................................................35

Request for Oral Argument....................................................35

4859-3706-4686 v.1

# TABLE OF AUTHORITIES

**Cases**                                              **Page(s)**

*Albrecht v. United States,*
   273 U.S. 1 (1927) ........................................................ 27

*Ausherman v. Bank of Am. Corp.,*
   352 F.3d 896 (4th Cir. 2003) ....................................... 12

*Assicurazioni Generali, S.p.A. v. Neil,*
   160 F.3d 997 (1998) ..................................................... 19

*Betty B Coal Co. v. Director, Office of Workers' Compensation*
   *Programs, United States Dep't of Labor,*
   194 F.3d 491 (4th Cir. 1999) ....................................... 13

*Blackledge v. Perry,*
   417 U.S. 21 (1974) ...................................................23-24

*Bland v. Roberts,*
   730 F.3d 368 (4th Cir. 2013) ....................................... 12

*Blankenship v. Manchin,*
   471 F.3d 523 (4th Cir. 2006) ....................................... 17

*Broughton v. North Carolina,*
   717 F.2d 147 (4th Cir. 1983) ...................................... 32

*Brown v. Edwards,*
   721 F.2d 1442 (5th Cir. 1984) ..................................... 27

*Cameron v. Fogarty,*
   806 F.2d 380 (2d Cir. 1986) ......................................... 27

*Carafas v. LaVallee,*
   391 U.S. 234 (1968) ..................................................... 32

iii

*Colten v. Kentucky,*
407 U.S. 104 (1972) ........................................................... 13, 33-34

*Davenport v. N.C. Dep't of Transp.,*
3 F.3d 89 (4th Cir. 1993) ........................................................... 24

*Earle v. Benoit,*
850 F.2d 836 (1st Cir. 1988) ........................................................... 27

*Frisbie v. Collins,*
342 U.S. 519 (1952) ........................................................... 27

*Gerstein v. Pugh,*
420 U.S. 103 (1975) ........................................................... 27

*Gilliam v. Sealey,*
932 F.3d 216 (4th Cir. 2019) ................................................ *passim*

*Hately v. Watts,*
917 F.3d 770 (4th Cir. 2019) ........................................................... 12

*Heck v. Humphrey,*
512 U.S. 477 (1994) ........................................................... 24

*Hous. Cmty. Coll. Sys. v. Wilson,*
595 U.S. 468 (2022) ........................................................... 17

*Hulbert v. Pope,*
70 F.4th 726 (4th Cir. 2023) ........................................................... 17

*In re Dairy Farms,*
223 S.E.2d 323 (N.C. 1976) ........................................................... 34

*Jakubiak v. Perry,*
101 F.3d 23 (4th Cir. 1996) ........................................................... 12

iv

*Justices of Boston Mun. Court v. Lydon,*
  466 U.S. 294 (1984) ..................................................... 33

*McDonald v. Skeen,*
  567 S.E.2d 209 (N.C. App. 2002) ................................. 25

*Moore v. Winfield,*
  178 S.E. 605 (N.C. 1935) ........................................ 28-31

*Myrick v. Cooley,*
  371 S.E.2d 429 (N.C. Ct. App. 1988 ........................... 12, 28, 30-31

*NAACP v. Peterman,*
  No. 1:20-cv-613 (M.D.N.C. Jul. 02, 2020) ...................... 4

*National Labor Relations Board v. Jones & Laughlin Steel Corp.,*
  301 U.S. 1 (1936) .......................................................... 34

*Nazario v. Gutierrez,*
  103 F.4th 213 (4th Cir. 2024) ...................................... 17

*Nieves v. Bartlett,*
  587 U.S. 391 (2019) ...................................................... 17

*Rowan County Bd. of Educ. v. United States Gypsum Co.,*
  418 S.E.2d 648 (N.C. 1992) ......................................... 29

*Simpson v. Sears, Roebuck & Co.,*
  752 S.E.2d 508 (N.C. Ct. App. 2013) .......................... 12, 28, 30-31

*State v. Brooks,*
  215 S.E.2d 111 (N.C. 1975) ......................................... 15

*State v. Daniel,*
  814 S.E.2d 618 (N.C. App. 2018) ................................ 26

*State v. Johnson,*
   37 803 S.E.2d 137 (N.C. 2017) .................................................... 23

*State v. Petty,*
   711 S.E.2d 509 (N.C. App. 2011) ................................................. 23

*State v. Phair,*
   No. COA22-445, 2023 WL 2127390 (N.C. App. Feb. 21, 2023) ... 23

*State v. Pulliam,*
   114 S.E. 394 (N.C. 1922) ............................................................. 33

*State v. Smith,*
   323 S.E.2d 316 (N.C. 1984) ......................................................... 15

*State v. Sparrow,*
   173 S.E.2d 897 (N.C. 1970) ................................................ *passim*

*State v. Spencer,*
   173 S.E.2d 765 (N.C. 1970) ................................................ *passim*

*Thigpen v. Roberts,*
   468 U.S. 27 (1984) ....................................................................... 13

*Thomas M. McInnis & Associates, Inc. v. Hall,*
   349 S.E.2d 552 (N.C. 1986) ......................................................... 25

*Thurmond-Green v. Hodges,*
   128 F. App'x 551 (8th Cir. 2005) ................................................. 27

*United States v. Fiel,*
   35 F.3d 997 (4th Cir. 1994) .......................................................... 13

4859-3706-4686 v.1

*United States v. George,*
971 F.2d 1113 (4th Cir. 1992) ..................................................... 13

*United States v. Martin,*
378 F.3d 353 (4th Cir. 2004) ............................................. *passim*

*Wells v. Johnson,*
22-CVS-1700 (Alamance Cnty. Sup. Ct., Sept 8, 2022) ................ 8

*Wells v. Johnson,*
No. 1:22-cv-00869 (M.D.N.C. 2022)............................................8-9

**Constitutional Provisions**

N.C. Const., art. I, § 24 ............................................................ 13, 32

N.C. Const. art. IV, § 12(6) ............................................................ 13

**Statutes, Rules, and Regulations**

42 U.S.C. § 1983........................................................... *passim*

Fed. R. Civ. P. 56................................................................................9

N.C. Gen. Stat. § 7A-196(b) (2023) ................................................ 14

N.C. Gen. Stat. § 7A-290 (2023)...................................................... 14

N.C. Gen. Stat. § 15A-1431(b) (2023) ............................................. 14

2 Criminal Procedure in North Carolina § 13.1 (2024)................... 15

4859-3706-4686 v.1

## Other Authorities

1A Strong's N.C. Index 4th Appeal and Error § 89 .......................... 14

Jordan Green, *Quiet protest met with threats in Graham, a bastion of Confederate sympathy*, Triad City Beat (Jun. 26, 2020) https://tinyurl.com/4hd467xd ............................................... 4

North Carolina Prosecutors' Resource Online, 401.1 Defendant's Right to Appeal (Dec 1, 2023) ....................................................... 16

4859-3706-4686 v.1

# INTRODUCTION

Under North Carolina law, when a criminal defendant appeals a district court conviction for a trial *de novo* in superior court, "it is as if the case had been brought there originally and there had been no previous trial," so that "[t]he judgment appealed from is completely annulled and is not thereafter available for any purpose." *State v. Sparrow*, 173 S.E.2d 897, 902 (N.C. 1970). Respectfully, the federal district court below violated this basic, black-letter law by treating Appellant Maurice Wells' district court convictions—which he appealed for a trial *de novo* in superior court—as having preclusive effect for purposes of establishing probable cause to arrest in this federal § 1983 action. Accordingly, Mr. Wells is entitled to reversal of the court's summary judgment order and a remand for further proceedings.

In July 2020, Mr. Wells was arrested by Sheriff Terry Johnson while participating in a Black Lives Matter protest in Graham, North Carolina near the Alamance County Courthouse. He was subsequently charged, tried, and convicted in North Carolina district court for disorderly conduct and failure to disperse.

1

Notably, North Carolina has a two-tier criminal court system, which entitles a defendant convicted in district court to appeal for a trial *de novo* in superior court. Under binding North Carolina Supreme Court precedent, "trial *de novo* in the superior court is a new trial from beginning to end, on both law and facts, disregarding completely the plea, trial, verdict and judgment below[.]" *State v. Spencer*, 173 S.E.2d 765, 771 (N.C. 1970). In 2021, Mr. Wells exercised his right to a trial *de novo* by appealing his district court convictions. JA 124.

In October 2022, Mr. Wells sued Sheriff Johnson in state court, alleging that his First Amendment rights were violated when he was arrested without probable cause for exercising his constitutional rights. Sheriff Johnson removed and then moved to dismiss that lawsuit, and Mr. Wells took a voluntary dismissal. Mr. Wells filed the instant lawsuit in state court, and Sheriff Johnson again removed the case to federal court. After discovery, the parties filed cross-motions for summary judgment. On July 30, 2024, the United States District Court for the Middle District of North Carolina granted Appellee Sheriff Terry S. Johnson's motion for summary judgment *with prejudice*. Specifically, even though Mr. Wells' district court conviction had been appealed for a

trial *de novo* in superior court, the District Court concluded that Mr. Wells' § 1983 retaliatory arrest claim failed, finding that his district court conviction established probable cause as a matter of law, negating an essential element of Mr. Wells' claim.

Mr. Wells timely appealed to this Court.

## JURISDICTIONAL STATEMENT

The District Court had subject matter jurisdiction over this § 1983 action under 28 U.S.C. § 1331. The District Court granted Appellee's motion for summary judgment, in full, on July 30, 2024 and entered a judgment on the same date that dismissed all of plaintiff's claims *with prejudice*. Mr. Wells timely filed notice of appeal of the District Court's final judgment on August 27, 2024. This Court has appellate jurisdiction over the District Court's final judgment under 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUE

Whether the District Court erred when it granted Appellee's Motion for Summary Judgment on the ground that Mr. Wells' conviction in state district court precluded a later § 1983 claim for retaliatory arrest, even though the conviction has been annulled by appeal for a trial *de novo* in state superior court.

4859-3706-4686 v.1

# STATEMENT OF THE CASE

## I.   Sheriff Johnson suppressed protests in Alamance County amid tension following the murder of George Floyd.

On June 26, 2020, one month after George Floyd was murdered, over 200 people peacefully crossed downtown Graham chanting, "Black lives matter" and a member of a group of individuals with Confederate flags told a reporter, "I'm going to follow them . . . and find out where they live. Country boys are going to hunt tonight." Jordan Green, *Quiet protest met with threats in Graham, a bastion of Confederate sympathy*, Triad City Beat (Jun. 26, 2020) https://tinyurl.com/4hd467xd. Following that protest, the city issued an emergency declaration effectively banning all protests for the foreseeable future. Compl. ¶ 4, *NAACP v. Peterman*, No. 1:20-cv-613 (M.D.N.C. Jul. 02, 2020), ECF 1 (naming Sheriff Johnson among other defendants). The NAACP challenged the ban and the United States District Court, the Honorable Catherine Eagles presiding, granted a preliminary injunction against its enforcement, finding that it was not a reasonable time, place, or manner restriction on speech. Order, *NAACP v. Peterman*, No. 1:20-cv-613 (M.D.N.C. July 6, 2020); ECF 15.

## II.   Sheriff Johnson arrested Wells.

Less than a week after Judge Eagles' order, on July 11, 2020, there was a peaceful Black Lives Matter demonstration in downtown Graham

to protest police violence, call for the removal of a Confederate statue, and call for the resignation of Sheriff Terry Johnson. Anton L. Delgado, *Marchers want Graham's Confederate statute gone,* Winston-Salem Journal, Jul. 12, 2020, at A6. The demonstration took place near the Confederate monument displayed outside the Alamance County Courthouse. Mr. Wells was there; it was among the first protests he had ever attended. [JA 378].

During the demonstration, a group of counter-protesters gathered in Sesquicentennial Park, a small public park near the courthouse that shelters the old courthouse bell. [JA 132]. Among them were Gary Williamson, Jr. and his father Gary Williamson, Sr., who were members of a confederate heritage group called Alamance County Taking Back Alamance County ("ACTBAC"). Sheriff Johnson knew Gary Williamson, Jr., having coached him on a high school football team. [JA 468].

Throughout the protest, ACTBAC counter-protesters rang the old courthouse bell. [JA 63]. ACSO officers did not order the counter-protesters to disperse or to stop ringing the bell during the demonstration. [JA 63–64].

As the demonstration ended and people began to disperse, some of the protesters, including Wells, began ringing the old bell to protest police

violence. Wells rang the bell while singing the chorus of the 1979 Anita Ward disco song, "Ring My Bell." He also yelled at the counter-protesters, saying "This is our motherfucking bell," and "I am going to ring the motherfucking bell." [JA 306].

Because he knew some of the counter-protesters, Sheriff Johnson was called to Sesquicentennial Park to address the situation. [JA 468]. When he arrived, he saw the Williamsons arguing with the BLM protesters, and he later described Wells and Williamson Jr. as the two "catalysts." [JA 485]. Estimating the crowd as "50/50" between protesters and counter-protesters, Sheriff Johnson recalled that the two groups "were arguing, getting ready to go at each other." [JA 477–78]. "[W]hen I had got up there, [the protesters and counter-protesters ] were face to face." *Id*. Sheriff Johnson testified that the Williamsons and some of the ACTBAC group were also using foul language, including the uttering the "F-" word. However, Sheriff Johnson later testified that they had a First Amendment right "to say what they want to." [JA 58–59].

Turning first to the Williamsons, Sheriff Johnson told them to leave "several times." [JA 40]. He said, "I put my hand on his shoulder and pushed Gary Williamson, Jr., back. I said: Look, you need to leave. This is going to get out of hand." [JA 38–39]. Sheriff Johnson further testified:

6

At that time, Mr. Wells was ringing a bell and cursing them and was hard to keep them held back. And finally, I told Gary Williamson, that if, if he did not leave, that he was going to go to jail and I wasn't playing around. That all they were doing was causing problems and costing taxpayers of Alamance County a lot of money.

[JA 39]. Sheriff Johnson also testified that "when I had my hand on my Gary's shoulder, I said: If you had [sic] do not leave here, you're going to go to jail." [JA 58].

But Sheriff Johnson did not arrest the Williamsons that day. *Id*. Despite starting to walk away, the Williamsons turned back and did not leave. They remained at the park, face to face and arguing with the BLM protesters. It was only after Mr. Wells was arrested that the crowd, including the Williamsons, dispersed. [JA 40].

After speaking to the Williamsons, Sheriff Johnson turned to Mr. Wells and said "son, quit ringing the bell or you're going to jail. It's time to disperse." [JA 39]. Wells told Sheriff Johnson that he intended to continue singing and ringing the bell and stated, "take me to fucking jail." [JA 128]. Sheriff Johnson then reached for and grabbed Mr. Wells' arms, informed him that he was under arrest, pulled him away from the bell, and took him into custody, passing him to the Graham Police Department for booking. [JA 128].

7

In the hours and days after the arrest, the Sheriff repeatedly explained that Mr. Wells was arrested for his use of indecent language. [JA 173 and JA Vol. II, Plaintiff's Exhibits F and H]. Mr. Wells, however, was charged with disorderly conduct and failure to disperse. Mr. Wells' attorney did not request a probable cause hearing, and he was convicted of the two misdemeanor charges on March 24, 2021, after a bench trial in which Sheriff Johnson testified. [JA 31]. Mr. Wells filed a notice of appeal for a trial *de novo* before a jury in Superior Court. His appeal is pending.

## III. Federal § 1983 Proceedings.

On April 13, 2023, Mr. Wells sued Sheriff Johnson under 42 U.S.C. § 1983 for First Amendment Retaliation in Alamance County, Superior Court. *Wells v. Johnson*, 22-CVS-1700 (Alamance Cnty. Sup. Ct., Sept 8, 2022). On May 25, 2023, Sheriff Johnson filed a Petition for Removal to the United States District Court for the Middle District of North Carolina.[1] Appellee filed his Answer on June 22, 2023. [JA 131].

---

[1] A prior lawsuit took a similar procedural course. *See Wells v. Johnson*, No. 1:22-cv-00869 (M.D.N.C. 2022). There, Mr. Wells filed a claim against Appellee in Alamance Superior Court on October 11, 2022. Appellee then removed the case to the Middle District of North Carolina. *Wells v. Johnson*, No. 1:22-cv-00869 (M.D.N.C. 2022), DE1. Appellee then moved

Following discovery, both parties filed summary judgment motions under Fed. R. Civ. P. 56 on April 3, 2024. [JA 147, 176]. On July 30, 2024, the District Court denied Mr. Wells' motion for summary judgment and granted Sheriff Johnson's motion for summary judgment in full. [JA 665]. Specifically, the District Court concluded that Mr. Wells' prior conviction in state district court conclusively established probable cause to arrest—the lack of which is an element of his retaliatory arrest claim—and thus Plaintiff was collaterally estopped under North Carolina law from litigating that issue in federal court. [JA 663].

Mr. Wells timely filed Notice of Appeal of the District Court's summary judgment order to this Court on August 27, 2024. [JA 666]

## SUMMARY OF THE ARGUMENT

The sole issue before this Court is whether Mr. Wells' First Amendment retaliatory arrest claim fails as a matter of law because his convictions in North Carolina state district court for disorderly conduct and failure to disperse conclusively establish probable cause to arrest. In

---

to dismiss the case on the grounds that the federal court, where Appellee had just removed the case, lacked jurisdiction. *Wells v. Johnson*, No. 1:22-cv-00869 (M.D.N.C. 2022), ECF 7. Plaintiff subsequently filed a voluntary dismissal and later filed the instant lawsuit. *Wells v. Johnson*, No. 1:22-cv-00869 (M.D.N.C. 2022), ECF 9.

4859-3706-4686 v.1

other words, is Mr. Wells collaterally estopped from challenging probable cause to arrest in this case? The District Court answered that question in the affirmative. This Court should reverse and remand because the District Court erred, for three main reasons.

*First*, the District Court failed to properly consider binding North Carolina Supreme Court precedent holding that when a district court conviction is appealed to superior court for a trial *de novo*, the conviction is a nullity. The district court proceedings are disregarded completely, and new proceedings are instituted from beginning to end. This includes a new probable cause hearing. In short, the "judgment appealed from is completely annulled and is *not thereafter available for any purpose*." *Sparrow*, 173 S.E.2d at 902 (emphasis added). The District Court violated this rule of state law by using the state district court conviction—which was annulled when Mr. Wells appealed for trial *de novo* in superior court—to conclusively establish probable cause for Mr. Wells' arrest for purposes of his § 1983 claim.

*Second*, instead of applying binding North Carolina Supreme Court precedent, the District Court relied on several North Carolina Court of Appeals' decisions for the premise that a vacated or reversed district

10

court conviction bars a later § 1983 claim. Respectfully, these decisions lack persuasive weight and authority. First, they are intermediate appellate decisions that do not carry the force of North Carolina's highest court. Second, these decisions were decided on shaky ground, as they rely on a 1935 opinion that was overruled *sub silentio* by the North Carolina Supreme Court in *Spencer* and *Sparrow*. Notably, the court of appeals itself has questioned the validity of its holdings in this line of cases, given *Spencer* and *Sparrow*.

*Third*, the District Court relied on this Court's decision in *Gilliam v. Sealey*, 932 F.3d 216 (4th Cir. 2019). But *Gilliam* is inapposite. In that case, this Court concluded that "North Carolina courts would refuse to give preclusive effect to a judgment that was obtained improperly and later invalidated." *Id.* at 232. This Court expressly declined to address whether an appealed, reversed, or vacated North Carolina district court judgment has preclusive effect in a federal § 1983 action, because *Gilliam* could be decided on other grounds. *Id.* Far from supporting the order below granting summary judgment, *Gilliam* recognizes that "North Carolina courts have repeatedly called . . . into question" the rule that a conviction later overturned or vacated has preclusive effect in a collateral

4859-3706-4686 v.1

proceeding. *Id.* at 231 (citing *Myrick v. Cooley*, 371 S.E.2d 429, 495 (N.C. Ct. App. 1988 and *Simpson v. Sears, Roebuck & Co.*, 752 S.E.2d 508, 509 (N.C. Ct. App. 2013)).

The issue left open in *Gilliam* is now squarely before this Court. Consistent with federalism principles, this Court's obligation to apply North Carolina Supreme Court precedent, and the clear weight of North Carolina authority, this Court should now hold that a district court conviction that is appealed for a trial *de novo* in superior court **does not have** preclusive effect for purposes of establishing probable cause in a § 1983 collateral proceeding. Accordingly, this Court should reverse and remand for further proceedings.

## ARGUMENT

### I.  STANDARD OF REVIEW.

This Court reviews the District Court's grant of summary judgment *de novo. Bland v. Roberts*, 730 F.3d 368, 373 (4th Cir. 2013). Summary judgment is appropriate only if "no material facts are disputed and the moving party is entitled to judgment as a matter of law." *Ausherman v. Bank of Am. Corp.*, 352 F.3d 896, 899 (4th Cir. 2003) (citing *Jakubiak v. Perry*, 101 F.3d 23, 26 (4th Cir. 1996)). This Court likewise reviews the application of collateral estoppel *de novo. Hately v. Watts*, 917 F.3d 770,

777 (4th Cir. 2019) (citing *United States v. Fiel*, 35 F.3d 997, 1005 (4th Cir. 1994)). "By definition, *de novo* review entails consideration of an issue as if it had not been decided previously." *United States v. George*, 971 F.2d 1113, 1118 (4th Cir. 1992); *see also Betty B Coal Co. v. Director, Office of Workers' Compensation Programs, United States Dep't of Labor*, 194 F.3d 491, 499 (4th Cir. 1999) ("The sum of a *de novo* review and a *de novo* process is a new adjudication.").

## II. NORTH CAROLINA'S TWO-TIER CRIMINAL SYSTEM.

Like many states, North Carolina has a two-tier system for adjudicating less serious criminal cases, such as traffic and misdemeanor offenses. *Thigpen v. Roberts*, 468 U.S. 27, 40–41 (1984) (O'Connor, J., dissenting) (citing *Colten v. Kentucky*, 407 U.S. 104, 122, n.4 (1972)). Appeals from the initial adjudication are guaranteed by the state constitution. N.C. Const. art. IV, § 12(6) ("Appeals from Magistrates shall be heard *de novo*, with the right of trial by jury as defined in this Constitution and the laws of this State."); *see also* N.C. Const., art. I, § 24 ("No person shall be convicted of any crime but by the unanimous verdict of a jury in open court . . . . The General Assembly may, however, provide for other means of trial for misdemeanors, with the right of appeal for trial de novo.").

4859-3706-4686 v.1

Per statute, "any defendant convicted in district court before the judge may appeal to the superior court for trial *de novo*." N.C. Gen. Stat. § 7A-290 (2023); *see also* 1A N.C. Index 4th Appeal and Error § 89. When a defendant charged with a misdemeanor is acquitted in state district court, all criminal proceedings are terminated, but "if a defendant either pleads guilty or is convicted after a bench trial, the defendant has an absolute right to 'appeal' to a superior court and receive a trial de novo with a jury." 1A Strong's N.C. Index 4th Appeal and Error § 89 (citing *United States v. Martin*, 378 F.3d 353 (4th Cir. 2004) (applying North Carolina law)); N.C. Gen.Stat. § 7A–196(b) (2023) ("In criminal cases there shall be no jury trials in the district court. Upon appeal to superior court trial shall be *de novo*, with jury trial as provided by law."); N.C. Gen. Stat. § 15A–1431(b) (2023) ("A defendant convicted in the district court before the judge may appeal to the superior court for trial de novo with a jury as provided by law.").

The purpose of the two-tier *de novo* appeal system "is to provide all criminal defendants charged with misdemeanor violations the right to a speedy trial in district court and to offer them an opportunity to learn about the state's case without revealing their own. In the latter sense,

4859-3706-4686 v.1

this procedure can be viewed as a method of 'free' criminal discovery." *State v. Brooks*, 215 S.E.2d 111, 121 (N.C. 1975)"; *see also* 2 Criminal Procedure in North Carolina § 13.1 (2024) (noting that criminal defendants should treat the district court proceedings as a mere "discovery device"); *see also State v. Smith*, 323 S.E.2d 316, 329 (N.C. 1984) ("The two-tier court system in North Carolina provides simple and speedy trials of misdemeanor cases in District Court, while at the same time insuring every defendant the absolute right to a full jury trial in Superior Court.").

Essentially, North Carolina's two-tier system gives defendants two bites at the apple. Although a defendant may have fewer constitutional protections during the first-tier district court proceedings—such as no jury, no discovery, no recording of the proceedings, and no immediate review by an intermediate court of appeals—if he is found not guilty, the case is over. *United States v. Martin*, 378 F.3d 353, 356 (4th Cir. 2004). But if convicted, he can immediately wipe the conviction clean by appealing to superior court and obtaining a trial *de novo* with the added panoply of constitutional rights. *Id.* (quoting *Sparrow*, 173 S.E.2d at 902) ("If a defendant chooses to file a 'notice of appeal' with a superior court,

the district court conviction is automatically nullified for most purposes."). The defendant is entitled to all proceedings in superior court that he would have had if his case had originated there, including a *de novo* determination of probable cause to arrest. *See* North Carolina Prosecutors' Resource Online, 401.1 Defendant's Right to Appeal (Dec 1, 2023).

### III. THE TRIAL COURT ERRED WHEN IT DISMISSED MR. WELLS' FIRST AMENDMENT RETALIATORY ARREST ACTION ON THE GROUNDS OF COLLATERAL ESTOPPEL.

The District Court erred by dismissing Mr. Wells' First Amendment Retaliatory Arrest Claim *with prejudice* in its summary judgment order. Mr. Wells presented competent record evidence of the lack of probable cause for his arrest sufficient to establish a genuine factual dispute for trial, including that the language he was arrested for uttering was protected speech—not fighting words—and that law enforcement did not issue a valid dispersal order. Nonetheless, the District Court granted summary judgment, concluding that Mr. Wells' convictions in North Carolina district court conclusively establish probable cause in this § 1983 action under collateral estoppel principles. But under North Carolina law, Mr. Wells' prior district court conviction was *annulled* by virtue of his appeal *de novo* to superior court in Alamance County.

16

Therefore, the District Court erred by applying collateral estoppel to bar Appellant's claim.

A plaintiff asserting a First Amendment claim of retaliation must show that: (1) he engaged in First Amendment protected activity; (2) the defendant took an action that adversely affected that protected activity; and (3) there was a causal relationship between the protected activity and the adverse action. *Nazario v. Gutierrez*, 103 F.4th 213, 236 (4th Cir. 2024) (citing *Blankenship v. Manchin*, 471 F.3d 523, 528 (4th Cir. 2006)). The adverse action—here, the arrest—is one "that would not have been taken absent the retaliatory motive." *Hous. Cmty. Coll. Sys. v. Wilson*, 595 U.S. 468, 477 (2022) (quoting *Nieves v. Bartlett*, 587 U.S. 391, 399 (2019)). A plaintiff defending against a motion for summary judgment must come forward with competent evidence illustrating that there was no probable cause for his arrest to establish the but-for causal link between the arrest and the impermissible motive. *Hulbert v. Pope*, 70 F.4th 726, 738 (4th Cir. 2023) (quoting *Nieves,* 587 U.S. at 402).

Here, Mr. Wells argued, *inter alia*, below, that Appellee lacked probable cause to arrest him on either charge because (1) the dispersal order that Sheriff Johnson issued was invalid, and (2) Mr. Wells was engaged in protected speech, not disorderly conduct. [JA 655]. But the

District Court avoided consideration of these arguments because it concluded, as a matter of law, that Mr. Wells' prior state district court conviction precluded him from litigating the issue of the lack of probable cause for his arrest in federal court.

Whether an appealed misdemeanor conviction in North Carolina District Court precludes a § 1983 claim in federal court is an issue of first impression in this jurisdiction. In dismissing Mr. Wells' claim, the district court below relied on *Gilliam*. [JA 660]. The *Gilliam* court, however, did not squarely resolve the issue now before this Court: whether an appealed misdemeanor conviction carries preclusive effect. *See Gilliam*, 932 F.3d at 232. ("We need not resolve these uncertainties in North Carolina law."). In fact, the *Gilliam* court cast serious doubt on the propriety of the outcome that prompted the instant appeal, stating that "there is reason to doubt whether it remains good law that even a vacated conviction precludes." *Id*. at 231.

An appealed misdemeanor conviction in North Carolina District Court does not collaterally estop a § 1983 claim in federal court for several reasons. *First*, *Sparrow* and its progeny make clear that an appealed conviction is not available for *any purpose*. *Second*, the District Court conviction is not a final judgment under North Carolina's collateral

estoppel doctrine. *Third*, the District Court erred in relying on several Courts of Appeals cases—instead of *Sparrow* and *Spencer*—and misread *Gilliam*. *Fourth*, this Court should avoid constitutional issues by deciding this case in line with *Sparrow* and *Spencer*.

### A. Under North Carolina Law, Mr. Wells' Conviction, Appealed *De Novo* To State Superior Court, Is Not Available For Any Purpose, So It Cannot Preclude His § 1983 Claim In Federal Court.

The critical legal issue before this Court—whether Appellant's prior state district court conviction, after appeal for a trial *de novo* in superior court, collaterally estops him from challenging probable cause to arrest—turns on North Carolina substantive law. This Court has stated that "[i]t is axiomatic that in determining state law a federal court must look first and foremost to the law of the state's highest court, giving appropriate effect to all its implications." *Assicurazioni Generali, S.p.A. v. Neil*, 160 F.3d 997, 1002 (1998). And of particular significance here, "[a] state's highest court need not have previously decided a case with identical facts for state law to be clear. It is enough that a fair reading of a decision by a state's highest court directs one to a particular conclusion." *Id.* Only when a state supreme court has not sufficiently spoken on an issue should a federal court look to seek guidance from a state intermediate court, and when resorting to intermediate authority, give deference "to a

19

lesser degree." *Id.* Where a federal court is persuaded that a state supreme court would decide an issue differently from an intermediate state appellate court, the federal court must follow how the state's highest court would rule. *Id.*

Here, the North Carolina Supreme Court has already clearly and unequivocally spoken about the effect of an appeal in the state's two-tier criminal court system. In *Sparrow*, the court noted:

> [w]hen an appeal of right is taken to the Superior Court, in contemplation of law it is as if the case had been brought there originally and there had been no previous trial. *The judgment appealed from is completely annulled and is not thereafter available for any purpose.*

173 S.E.2d at 902 (emphasis added). In *Spencer,* decided on the same day as *Sparrow*, the court added that it "is established law in North Carolina that trial *de novo* in the superior court is a new trial from beginning to end, on both law and facts, *disregarding completely the plea, trial, verdict and judgment below*; and the superior court judgment entered upon conviction there is wholly independent of any judgment which was entered in the inferior court." 173 S.E.2d 765, 771 (emphasis added). The North Carolina Supreme Court could not be clearer. Once a defendant files a notice of appeal to superior court, the district court judgment is

wiped clean, annulled, disregarded completely, and not available for *any* purpose.

*Spencer* is especially illustrative of the complete nullity of an appealed state district court conviction. In *Spencer*, several defendants were convicted in North Carolina district court, appealed as of right to the superior court, were convicted again following trial *de novo,* and all received harsher sentences in superior court. *Spencer*, 173 S.E.2d at 770–71. Citing the rule against vindictiveness in sentencing, the defendants argued that their increased sentences were unconstitutional. *Id.* The North Carolina Supreme Court disagreed, reasoning that the rule against vindictiveness in sentencing did not apply to bar the greater sentences, because the sentences were imposed after a *de novo* trial in superior court where "the slate was wiped clean and the cases stood for trial in the superior court as if there had been no previous trial in the district court." *Id.* at 772. Important to the court's reasoning is that superior sentences after *de novo* appeal are "wholly new sentences rather than increases in old ones." *Id.* Thus, while *Spencer* did not involve

4859-3706-4686 v.1

identical facts to those here, the rule taken from that case is broad and unambiguous in command and applies with equal force.

Whether the complete annulment of a district court conviction by appeal *de novo* protects against the concern of retaliation as in *Spencer*, or is used to prevent issue prelusion in a pending lawsuit as here, the purpose of the annulment of the district court judgment is advanced in both contexts. The point of the annulment rule set forth in *Spencer* is to ensure that the litigation of a criminal jury trial occurs on a clean slate in state superior court. Sometimes litigating on that clean slate will result in a better outcome for a defendant, and other times it will result in a less favorable outcome; but *Spencer* made no differentiation between the two. Regardless of context, the annulment rule of *Spencer* applies, and *the appealed district court judgment is completely annulled and unavailable for any purpose*. The annulment rule prevents legal prejudice, such that both parties enjoy the fresh opportunity to litigate unmoored, for better or for worse, from the prior district court judgment. A fair reading of *Spencer* compels a particular conclusion here: as the prior district court judgment is annulled, it necessarily cannot

22

collaterally estop Mr. Wells from litigating the issue of the lack of probable cause.

The annulment rule laid down in *Sparrow* and *Spencer* continues to be cited and relied on by the North Carolina appellate courts, including the Supreme Court. *See, e.g.*, *State v. Johnson*, 37 803 S.E.2d 137, 139 (N.C. 2017) (quoting *Sparrow*'s annulment rule as justification for not reviewing the district court's ruling)*; State v. Petty*, 711 S.E.2d 509, 511 (N.C. App. 2011) (relying on *Sparrow* and *Spencer* for the "general proposition" that a defendant appealing from district court to superior court "is effectively writing on a clean slate in the [s]uperior [c]ourt"); *State v. Phair*, No. COA22-445, 2023 WL 2127390 at *2 (N.C. App. Feb. 21, 2023) (quoting *Sparrow*'s annulment rule). Further, the rule is consistent with *Martin* and other Supreme Court decisions, discussed *infra* Section III.D., interpreting, and addressing the constitutionality of two-tier systems. Finally, the rule is consistent with the United States Supreme Court decision in *Blackledge v. Perry,* 417 U.S. 21 (1974), addressing North Carolina's two-tier system and concluding that the "right to trial *de novo* is absolute," and "[w]hen an appeal is taken, the statutory scheme provides that the slate is wiped clean; the prior

conviction is annulled, and the prosecution and the defense begin anew in the Superior Court." *Id.* at 22, n. 1 (citing *Spencer*, 173 S.E.2d, and *Sparrow*, 173 S.E.2d).

The District Court failed to correctly analyze and apply *Sparrow, Spencer,* and *Blackledge*, and committed reversible error when it applied collateral estoppel to bar Mr. Wells' § 1983 claim. Accordingly, this Court should reverse and remand for further proceedings.

### B. In North Carolina, An Appealed District Court Conviction Is Not A Final Judgment, So Mr. Wells' § 1983 Claim Cannot Be Collaterally Estopped.

The District Court also incorrectly applied collateral estoppel to bar Mr. Wells's claim. Out of respect for federalism principles, "[t]he *res judicata* effect of state-court decisions in § 1983 actions is a matter of state law." *Heck v. Humphrey*, 512 U.S. 477, 480 n.2 (1994)[2]; *see also Davenport v. N.C. Dep't of Transp.*, 3 F.3d 89, 92 (4th Cir. 1993) (stating that the question "is whether, if the instant § 1983 action were pending in a North Carolina state court, the North Carolina courts would give the

---

[2] Because North Carolina state courts would not give preclusive effect to an appealed district court conviction in a collateral proceeding, the *Heck* bar—and the federalism interests it implicates—are not applicable here. *Heck*, 512 U.S. at 480, 486–87.

earlier state court judgment" preclusive effect). Under North Carolina law, the elements of collateral estoppel are: "(1) a prior suit resulting in a *final judgment* on the merits; (2) identical issues involved; (3) the issue was actually litigated in the prior suit and necessary to the judgment; and (4) the issue was actually determined." *McDonald v. Skeen*, 567 S.E.2d 209, 211 (N.C. App. 2002) (emphasis added) (citing *Thomas M. McInnis & Associates, Inc. v. Hall*, 349 S.E.2d 552, 557 (N.C. 1986)).

Here, by function of state law, there is no final judgment in Mr. Wells' criminal case and there can consequently be no collateral estoppel. The moment that Mr. Wells noticed his appeal to superior court, his district court convictions were invalidated by virtue of being annulled. As this Court made clear in *Martin*, "the adjudication and sentence arising out of the first tier **merely constitute an interim disposition** in what is, in reality, a bifurcated trial system, and as such, ***lack any semblance of finality***." *Martin,* 378 F.3d at 359 (emphasis added). Mr. Well's district court conviction was not final but interim; the District Court erred in ruling otherwise. That a district court conviction is not a final judgment regarding probable cause is further shown by the fact that a defendant can challenge probable cause to arrest in superior court. *See,*

*e.g., State v. Daniel,* 814 S.E.2d 618, 618 (N.C. App. 2018) (noting that after conviction in district court, defendant appealed *de novo* to superior court and filed a motion to suppress, contending that the trooper lacked probable cause to arrest him; following a hearing on the matter, the superior court granted defendant's motion), *aff'd,* 827 S.E.2d 94 (N.C. 2019) (per curiam).

Further, the three other elements of collateral estoppel are also lacking. Specifically, the issue of whether there was probable cause *to arrest* Mr. Wells was never raised, litigated, or decided in state district court. True, the district court found him guilty of disorderly conduct and failure to disperse, but whether there is sufficient proof to convict at trial is a different question from whether there are sufficient facts *at the time of arrest to support the arrest.* As the First Circuit aptly explained:

> [i]t is one thing to treat a criminal conviction—even one that is later reversed—as barring a subsequent cause of action for malicious prosecution against the complaining witness. It is another to treat such a conviction as determinative of whether an arresting officer had probable cause, at the time he made an arrest, to have arrested someone. Whether or not an arresting officer had probable cause depends on the facts and circumstances known to police at the time of the arrest. Conviction of the accused at a subsequently held trial may demonstrate the existence, at that later time, of adequate evidence of guilt, but it does not necessarily reflect the sufficiency of the police's knowledge at the time of the arrest.

4859-3706-4686 v.1

*Earle v. Benoit*, 850 F.2d 836, 849–50 (1st Cir. 1988). Numerous courts agree that a _conviction_ does not collaterally estop a plaintiff from later challenging probable cause _to arrest_ in a § 1983 claim. *See Brown v. Edwards*, 721 F.2d 1442, 1447–48 (5th Cir. 1984) ("We think it evident that neither [collateral estoppel nor *res judicata*] is applicable here to bar civil damage actions in respect to arrest for any of the offenses. The criminal and civil causes of action are different. The validity of the arrest was not actually litigated in the state court proceedings. And, there is nothing necessarily inconsistent between the arrest being illegal and each conviction being proper. This is the general rule.") (first citing *Gerstein v. Pugh*, 420 U.S. 103, 119 (1975); then *Frisbie v. Collins*, 342 U.S. 519, (1952); and then *Albrecht v. United States*, 273 U.S. 1, (1927)); *Cameron v. Fogarty*, 806 F.2d 380, 385 (2d Cir. 1986) (concluding that the issue of probable cause to arrest was not decided during the criminal court proceedings and thus "litigation in the present lawsuit of the existence of probable cause to arrest Cameron on Eighth Avenue is not barred by principles of collateral estoppel"); *Thurmond-Green v. Hodges*, 128 F. App'x 551, 552 (8th Cir. 2005) (per curiam) (concluding conviction did not collaterally estop a § 1983 claim based on false arrest "because the record does not reflect whether the issues in the instant case

27

were actually litigated during Green's criminal proceeding"); *Myrick v. Cooley*, 371 S.E.2d 492, 495 (N.C. App. 1988) (in the context of expressing doubt about the continued validity of *Moore v. Winfield*, 178 S.E. 605 (N.C. 1935), opining that "it seems incongruous to infer from a subsequent conviction the existence of probable cause for the initial arrest when it is clear that innocence of the offense charged does not establish an absence of probable cause for the arrest"). Consistent with these decisions, this Court should conclude that Mr. Wells' appealed convictions do not collaterally estop him from collaterally challenging the legality of his arrest.

## C. The District Court Further Erred by Relying on Two Decisions of the North Carolina Court of Appeals and by Misreading *Gilliam*.

The District Court erroneously relied on outdated law and misread *Gilliam*. The District Court relied on two opinions of the North Carolina Court of Appeals, *Myrick v. Cooley*, 371 S.E.2d 492 (N.C. Ct. App. 1988) and *Simpson v. Sears, Roebuck & Co.*, 752 S.E.2d 508 (N.C. App. 2013), to conclude that, absent the allegation that the conviction was obtained by fraud or other unfair means, a district court conviction has preclusive effect in a collateral proceeding alleging false arrest or imprisonment. [JA 657]. Notably, both *Myrick* and *Simpson* rely on the North Carolina

Supreme Court's decision in *Moore v. Winfield*, 178 S.E. 605 (N.C. 1935), in which the court held that a lower court conviction insulated the complaining witness from liability for malicious prosecution, unless the warrant could be impeached for fraud or other unfair means in its procurement. *Id*. at 606. But *Moore* and its progeny do not control, because reviewing the cases leads to the inescapable conclusion that North Carolina Supreme Court overruled *Moore, sub silentio,* in *Sparrow* and *Spencer. C.f. Rowan County Bd. of Educ. v. United States Gypsum Co*., 418 S.E.2d 648, 653 (N.C. 1992) (reviewing two contrary lines of cases and concluding that "the second line of cases overrules, *sub silentio*, the earlier line.").

*Moore* cannot be reconciled with the rule established in *Sparrow* and *Spencer. Sparrow*'s plain and unambiguous assertion that an appealed conviction from a first-tier court cannot be used for *any purpose* squarely contravenes *Moore*'s prior understanding of a district court conviction being conclusive evidence of probable cause for prosecution unless attacked for fraud or unfair procurement. The North Carolina Court of Appeals recognized the incongruity between the cases, stating that it "question[ed] the continuing validity" of *Moore* in light of *Sparrow*,

but felt obliged to apply the *Moore* line of cases despite "doubts about the wisdom of the rule we now apply." *Myrick*, 371 S.E.2d at 495 (citing *Moore* and *Sparrow*, and applying the rule in *Moore* despite expressing doubts about its continuing validity); *Simpson*, 752 S.E.2d at 509-510 (citing *Moore*, *Sparrow*, and *Myrick* and applying the rule in *Myrick*, despite noting that the doctrine expressed in *Moore* "has eroded somewhat over time"). Respectfully, the court of appeals in *Myrick* and *Simpson* erred by failing to acknowledge that *Moore* was overturned *sub silentio* by *Sparrow* and *Spencer*.[3] The District Court in this case should have applied *Sparrow* and *Spencer*—not *Myrick* and *Simpson*—and concluded that Mr. Wells' claim was not barred by collateral estoppel.

The District Court also reasoned that this Court's decision in *Gilliam* supported its order granting summary judgment to Appellees. But *Gilliam* does no such thing. Significantly, *Gilliam* did not involve the collateral effect of a district court conviction annulled by an appeal *de novo* to superior court. Instead, *Gilliam* involved only the potential preclusive effect of a *vacated* state *superior court* conviction on a later

---

[3] As an intermediate error correcting court, the North Carolina Court of Appeals likely presumed it was institutionally incapable of resolving the tension between *Sparrow*/*Spencer* and *Moore*.

4859-3706-4686 v.1

§ 1983 claim. *Gilliam,* 932 F.3d at 224–26, 231. The state in *Gilliam* had argued that, under North Carolina law, plaintiff's vacated superior court conviction established probable cause for purposes of his § 1983 claims. *Id.* at 231. After citing *Myrick* and *Simpson* and acknowledging that "North Carolina courts have repeatedly called this rule into question," this Court determined it "need not resolve" any uncertainty about the preclusive effect of a vacated judgment because, in any event, North Carolina would not give preclusive effect to a conviction obtained by fraud or other unfair means, which plaintiff had pled. *Id.* at 232.

Not so here. Unlike *Gilliam*, Mr. Wells has never been convicted in superior court. *Id.* at 230–31. Those charges remain pending, and his state district court conviction was annulled by appeal. In *Gilliam*, the superior court conviction was vacated; here, there was no superior court conviction, and the district court conviction was annulled, not vacated. *Id.* Further, in *Gilliam*, this Court could avoid the issue identified in *Moore* and *Simpson*—namely, the continued validity of *Moore* post-*Sparrow* and *Spencer*. *Id.* at 232. But here, this issue is squarely before this Court for merits disposition because it formed the basis for the District Court's erroneous summary judgment ruling.

31

In short, the District Court's order granting summary judgment to Appellee misapplied controlling North Carolina and should be reversed.

## D. This Court Should Avoid Construing North Carolina's Two-Tier System In A Way That Would Create Serious Constitutional Concerns.

Interpreting North Carolina's two-tiered criminal system to mean that a first-tier conviction precludes a later § 1983 claim creates a constitutional problem, because claim and issue preclusion are significant collateral consequences imposed in the absence of a jury trial. *See Broughton v. North Carolina*, 717 F.2d 147, 148–49 (4th Cir. 1983) (per curiam) (defining collateral consequences as those that create "a substantial stake in the . . . conviction which survives the satisfaction of the sentence") (quoting *Carafas v. LaVallee*, 391 U.S. 234, 237 (1968)). The text of the North Carolina Constitution guarantees that "[n]o person shall be convicted of any crime but by the unanimous verdict of a jury in open court . . . . The General Assembly may, however, provide for other means of trial for misdemeanors, with the right of appeal for trial de novo." N.C. Const., art. I, § 24. The right to appeal for a trial *de novo* safeguards the defendant's state constitutional right to a jury trial, despite his conviction in district court without the intervention of a jury.

32

*Spencer*, 173 S.E.2d at 771 (citing *State v. Pulliam*, 114 S.E. 394, 395 (N.C. 1922)).

This Court and the Supreme Court have emphasized that two-tier systems pass constitutional muster—notwithstanding the constitutional infirmities in the first tier—because it is "presumed that *virtually no collateral consequences* w[ill] result from a judgment rendered in a first-tier court." *Martin*, 378 F.3d at 360 (emphasis added); *see also Justices of Boston Mun. Court v. Lydon*, 466 U.S. 294, 310 (1984) (stating that "virtually nothing can happen to a defendant at a first-tier trial that he cannot avoid" because"[o]nce the right to a trial de novo is exercised, the judgment at the bench trial is 'wiped out'") (citing *Mann v. Commonwealth*, 271 N. E. 2d 331 (1971); *Colten v. Kentucky*, 407 U.S. 104, 119–20 (1972) (opining that "a defendant can bypass the inferior court simply by pleading guilty and erasing immediately thereafter any consequence that would otherwise follow from tendering the plea"). But for the fact that an appeal wipes out the district court conviction, and the conviction thereby does not implicate collateral estoppel principles, two-tier systems would likely be unconstitutional. *See Martin*, 378 F.3d at 359 ("[T]he first-tier proceeding lacks a number of procedural and

constitutional safeguards normally afforded to criminal defendants, casting substantial doubt on the reliability of the resulting interim disposition."); *Colten*, 407 U.S. at 117 (stating that first-tier "inferior courts are not designed or equipped to conduct error-free trials, or to insure full recognition of constitutional freedoms") (internal quotation marks and citation omitted).

Giving preclusive effect to Mr. Wells' district court conviction would compel him to suffer a serious collateral consequence of a conviction that was obtained without a jury, calling into question the constitutionality of North Carolina's two-tier system. This Court should avoid this constitutional problem by deciding this case in line with *Sparrow* and *Spencer. See In re Dairy Farms*, 223 S.E.2d 323, 328–29 (N.C. 1976) ("The cardinal principle of statutory construction is to save and not to destroy. We have repeatedly held that as between two possible interpretations of a statute, by one of which it would be unconstitutional and by the other valid, our plain duty is to adopt that which will save the act. Even to avoid a serious doubt the rule is the same.") (quoting *National Labor Relations Board v. Jones & Laughlin Steel Corp.*, 301 U.S. 1, 30 (1936)).

4859-3706-4686 v.1

## CONCLUSION

Based on the foregoing, Mr. Wells respectfully requests that the judgment of the District Court be reversed and the case remanded for further proceedings.

## REQUEST FOR ORAL ARGUMENT

Mr. Wells respectfully requests oral argument on the grounds that it will substantially aid this Court's decisional process. This also appeal involves matters of public interest and initial impression. The central issue before this Court turns on the correct application of North Carolina collateral estoppel law to state district court criminal judgments once a *de novo* appeal is taken to state superior court. This Court in *Gilliam* acknowledged uncertainty about a related issue, namely, whether it remains good law that a vacated conviction precludes an individual from challenging whether there was probable cause for an arrest in North Carolina. *Gilliam* casts doubt on the effect of a vacated district court conviction by cross-referencing North Carolina cases addressing the effect of *de novo* appeals taken from North Carolina district to superior court, the issue at bar. Thus, contemporaneous dialogue with counsel through oral argument will ensure that the correct trajectory of North

4859-3706-4686 v.1

Carolina law, as decreed by that state's Supreme Court, is followed and that this important issue is thoroughly vetted so that appropriate guidance can issue to the District Courts.

Respectfully submitted,

/s/ Jeffrey A. Wald
Jeffrey A. Wald
Lorin J. Lapidus
Nelson Mullins Riley &
    Scarborough LLP
380 Knollwood Street
Suite 530
Winston Salem, NC
    27103
(336) 774-3300

/s/ Sarah Ludington
Sarah Ludington
C. Amanda Martin
Samara Jacobson[†]
Meghna Melkote[†]
First Amendment Clinic
Duke University
    School of Law
210 Science Dr., Box 90360
Durham, NC 27708-0360
(919) 613-7230

Counsel for Appellant

Date:   October 9, 2024

[†] Law student appearing under Cir. R. 46(a).

4859-3706-4686 v.1

# CERTIFICATE OF COMPLIANCE

In accordance with Federal Rule of Appellate Procedure 32(a)(7)(C), the undersigned certifies that this brief:

(i)      complies with the type-volume limitation of Rule 32(a)(7)(B) because it contains 7,322 words, including footnotes and excluding the parts of the brief exempted by Rule 32(a)(7)(B)(iii); and

(ii) complies with the typeface requirements of Rule 32(a)(5) and the type-style requirements of Rule 32(a)(6) because it has been prepared using Microsoft Office Word 2013, set in Century Schoolbook font in a size measuring 14 points or larger.

/s/ Jeffrey A. Wald

**CERTIFICATE OF SERVICE**

I certify that on October 9, 2024 the foregoing brief was filed using the Court's CM/ECF system. All participants in the case are registered CM/ECF users and will be served electronically via that system.

/s/ Jeffrey A. Wald
Jeffrey A. Wald
Nelson Mullins Riley &
   Scarborough LLP
380 Knollwood Street
Suite 530
Winston Salem, NC 27103
(336) 774-3335

Counsel for
Defendants-Appellees